UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Gregory T. Merriweather, | ) | Civil Action No.: 5:18-cv-00421-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Acting Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | | |

Plaintiff Gregory T. Merriweather ("Merriweather") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for supplement security income ("SSI") pursuant to the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF No. 25].

**Factual Findings and Procedural History**

On April 7, 2014 Merriweather filed an application for SSI benefits, alleging disability beginning on December 31, 2010; however, at his hearing, he amended his alleged onset date to April 7, 2014. The Social Security Administration denied his application initially and on reconsideration, therefore Merriweather requested a hearing before the Administrative Law Judge ("ALJ"). The ALJ held a hearing on February 21, 2017. The ALJ denied his claim on April 10, 2017, finding that he was not under a disability as defined by the Social Security Act, as amended.

Merriweather alleges he has medical impairments with respect to his left shoulder and left arm

which resulted in the need for a left superior labral tear from anterior to posterior ("SLAP") repair. He has also undergone a shoulder surgery to repair his rotator cuff [Tr. 483; 619]. On December 13, 2014, an MRI of his left shoulder revealed a full thickness re-tear of the tendon. [Tr. 782]. He underwent a third surgery to repair his rotator cuff on September 14, 2015. [Tr. 1057]. He received further treatment due to degenerative disc disease and associated neck pain. An MRI on March 28, 2016 showed moderate neural foraminal stenosis at the C4-C5 level, as well as degenerative disc disease at the C5-C6 level with disc osteophyte complex, and moderate left neural foraminal stenosis at the C5-C6 level. [Tr. 1129-1130]. Plaintiff also states he has bilateral knee pain for which he has undergone physical therapy and has required the use a cane. [Tr. 57-58]. Plaintiff's medical history also includes the fact that he has suffered several strokes and experienced heart problems, such as an irregular heartbeat and high blood pressure. [Tr. 61]. Medical records from the Veterans Administration Medical Center indicate he has had strokes in more than one location of the brain, as well as some atrophy of the brain. [Tr. 353, 687]. He wore a "stress sleeve" for a period of time for issues related to elbow pain. Finally, he has been diagnosed and treated for mental health conditions, including depression. When he was evaluated on April 3, 2014, his GAF score was 50. [Tr. 383]. In 2016, Merriweather had a GAF score of 52, and in October of 2016, he reported worsening depression with frequent suicidal ideation. [Tr. 1215]. Plaintiff previously worked as a landscaper. He also worked for a short period of time at Walmart and the Salvation Army. [Tr. 53].

At the hearing, Merriweather's counsel requested that the ALJ hold open the record for fourteen days for the submission of additional medical evidence. However, Merriweather did not provide any additional medical evidence nor did he request any further extension of time. In the decision denying benefits, The ALJ determined that, although Merriweather suffers from degenerative disc disease, he

still retained the residual functional capacity to perform light work, with additional limitations [ECF No. 9-2, p. 33]. The ALJ's findings were as follows:

> (1) Claimant has not engaged in substantial gainful activity since April 7, 2014, the amended alleged onset date (20 C.F.R. 416.971 *et seq.*).
>
> (2) Claimant has the following severe impairments: left shoulder disorders, bilateral knee degenerative joint disease, cervical spine degenerative disc disease, status post strokes, and depression (20 C.F.R. 416.920(c)).
>
> (3) Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, 416.926).
>
> (4) After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. 416.967(b). Claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand or walk 6 hours in an 8 hour workday, and sit 6 hours in an 8 hour workday. Claimant can occasionally reach with the left upper extremity, and frequently handle and finger with the left upper extremity. Claimant can occasionally reach with the left upper extremity, and frequently handle and finger with the left upper extremity. Claimant can occasionally crawl and climb ladders, ropes, and scaffolds, and frequently stoop, kneel, crouch, balance, climb ramps, and climb stairs. Claimant can tolerate occasional exposure to hazards such as unprotected heights and moving mechanical parts. Claimant is limited to simple, routine tasks and simple work-related decisions, but is able to maintain concentration, persistence, and pace for 2 hour periods, perform activities within a schedule, maintain regular attendance, and complete a normal workday and workweek. Claimant can occasionally interact with the general public and can tolerate frequent changes in a routine work setting.
>
> (5) Claimant has no past relevant work (20 C.F.R. 416.925).
>
> (6) Claimant was born on April 1, 1963 and was 51 years old, which is defined as an individual closing approaching advanced age, on the date the application was filed (20 C.F.R. 416.963).

(7) Claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

(8) Transferability of job skills is not an issue because claimant does not have past relevant work (20 C.F.R. 416.968).

(9) Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 C.F.R. 416.969 and 416.969(a)).

(7) Claimant has not been under a disability, as defined in the Social Security Act, since April 7, 2014, the amended alleged onset date.

[ECF No. 10-2, pp. 16-26; Tr. 15-26].

Merriweather requested a review of the ALJ's decision by the Appeals Council. The Appeals Council denied this request for review on December 11, 2017, making the ALJ's decision the final decision for purposes of judicial review. On February 13, 2018, Merriweather filed a complaint seeking judicial review of the Commissioner's decision. [ECF No. 1]. Both Plaintiff and Defendant filed briefs [ECF No. 19; ECF No. 21], and the Magistrate Judge issued her Report and Recommendation on May 28, 2019, recommending that the Commissioner's decision be affirmed. [ECF No. 25]. The Magistrate Judge recommends affirming the Commissioner's decision because substantial evidence exists to support the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Plaintiff filed objections on June 12, 2019. [ECF No. 27].[1] Defendant replied to these objections on June 25, 2019. [ECF No. 30].

## Standard of Review

**I.    Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act,

---

[1] Plaintiff's Objection was due June 11, 2019. Although filed a day late, the Court will still consider the Objection.

which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific

5

objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental

6

impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

7

impairment prevents claimant from performing past relevant work;[3] and (5) whether the impairment prevents him from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

---

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

8

## Analysis

**I. RFC Assessment**

Merriweather contends that the ALJ failed to adequately explain his residual functional capacity findings (the "RFC") as required by Social Security Ruling 96-8p. Merriweather argues the ALJ did not properly explain how the RFC limitations accounted for his mental impairments. Merriweather contends that the ALJ's RFC limitation providing that he could stay on task for two hour periods does not account for his moderate difficulties in concentration, persistence and pace. Relatedly, Merriweather argues that the ALJ failed to account for his social interaction limitations and his inability to interact appropriately with others. The Commissioner argues substantial evidence supports the ALJ's findings.

As stated in the Social Security Regulations, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996). Further, an RFC assessment must include a discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SSR 96-8p, 1996 WL 374184, at *7. In considering a limitation for concentration, persistence, and pace, the Fourth Circuit has determined that the ability to perform simple tasks differs from the ability to stay on task in making an RFC assessment. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). *Mascio* remanded a case where the ALJ did not properly explain why a finding at step three of a moderate limitation in concentration, persistence, or pace did not translate into a limitation within the RFC finding. *Id.*

The ALJ in this case determined that Merriweather had moderate limitations in interacting with others, as well as in concentrating, persisting, or maintaining pace. In making the RFC assessment, the ALJ detailed Merriweather's mental health record and history, before ultimately finding that his

9

depressive issues indeed warranted a restriction within the RFC to simple routine tasks and simple work-related decisions. The ALJ further limited Merriweather in determining that he is only able to maintain concentration, persistence, and pace for two hour periods. With respect to social interaction, the ALJ included further limitations within the RFC to include only occasional interaction with the general public. These limitations were presented in the hypothetical formulated to the vocational expert, as well. Thus, in accordance with *Mascio*, the ALJ properly accounted for Merriweather's moderate limitation in concentration, persistence, or pace and adequately explained how it affected the RFC and ultimate finding that he was not disabled under the Act. A finding that a claimant with a moderate impairment with respect to concentration and pace is not inconsistent with a finding that he could keep pace in two hour segments during the work day. *See Pippen v. Astrue*, No. 1:09-cv-308, 2010 WL 3656002, at *5 (W.D.N.C. Aug. 24, 2010) (citing *Camp v. Schweicker*, 643 F.2d 1325, 1330 n. 2 (8th Cir. 1981).

Additionally, the ALJ provided other facts regarding Merriweather's mental abilities to support his RFC finding, including the fact that he worked or attempted to find work for at least a short period of time during the period in question and stopped working at the Salvation Army for reasons unrelated to his mental condition. As to Merriweather's social functioning, the ALJ gave an adequate explanation as to his findings within the RFC related to social functioning. While Merriweather continues to contend that the ALJ did not consider his family problems, social relationship problems, and his issues related to hallucinations, the ALJ's decision evidences otherwise. First, the ALJ stated that he considered the entire record and included within his findings references to the medical record. For example, the ALJ stated that treatment notes do not document repeated complaints of paranoia. The ALJ also noted that at least one medical record noted suicidal ideation. Further, the ALJ noted that he

10

considered Merriweather's testimony that he does not like to go out in public and isolates himself. Second, the ALJ provided for social functioning limitations within the RFC by providing only "occasional interaction with the general public," thereby showing that the ALJ did consider Merriweather's social interaction limitations. Finally, Merriweather argues that the ALJ should have differentiated between Merriweather's problems with the public versus with co-workers or supervisors. Nonetheless, as noted by the Commissioner, the representative jobs identified in the ALJ's decision at step five do not involve significant social interaction. This Court does not find any error in this regard because the ALJ indeed limited the RFC with respect to public interaction and apparently found it significant that he continued to seek work but ceased working after about a month due to shoulder problems, as opposed to problems interacting with others. Further, the ALJ's analysis reflects a thoughtful consideration of Merriweather's impairments. This Court is not tasked with substituting its own judgment for that of the ALJ where substantial evidence supports the ALJ's findings. Therefore, Merriweather's objections related to the mental limitations are overruled.

**II. Opinion of Dr. Mohan**

Merriweather next contends that the ALJ did not properly consider the opinion of Dr. Mohan regarding Merriweather's knee issues, instead relying on a state agency physician opinion dated prior to Dr. Mohan's opinion. The Commissioner contends that the ALJ gave a sufficient explanation for the weight afforded to Dr. Mohan, a compensation and pension examiner for the Veteran's Administration.

The Regulations contemplate considering and weighing all medical opinions included in a claimant's case. 20 C.F.R. §416.927(b). The Commissioner may consider several factors, including the examining relationship, legnth of treatment relationship and frequency of examination, the nature and extent of treatment and supportability. The Regulations also provide that where a physician's opinion

is not supported by clinical evidence, or if the opinion is inconsistent with other substantial evidence, it may be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Further, any other factors that may support or contradict an opinion should be considered. A state agency medical consultant's opinion should be given weight insomuch as it is based on whether the opinion is supported by evidence in the record. SSR 96-6p. Where a state agency consultant's opinion is not supported by any evidence within the record, that opinion should be given less weight. *See Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). Social Security Ruling 96-2p provides that an unfavorable decision contain specific reasons for the weight given to a treating source's medical opinion, supported by evidence within the record, and must be sufficiently specific to allow subsequent reviewers the ability to determine the weight given to a source and the reasons for that weight.

Here, Dr. Mohan provided an opinion as to Merriweather's shoulder impairment and knee impairment. In affording "some weight" to the shoulder impairment opinion, the ALJ explained that the opinion was generally consistent with two state agency examiners, and it seemed reasonable or consistent with Merriweather's ongoing shoulder issues. The ALJ explained, however, that the limitations provided by Dr. Mohan were not work-related limitations and were otherwise vague. As to Dr. Mohan's opinion regarding the knee issues, the ALJ gave that portion of the opinion "little weight" because again, the limitations were not specific to work-related limitations and were vague. Further, the ALJ also found the opinion to be inconsistent with the other opinions in the record and was inconsistent with other medical records indicating functional abilities such as normal gait, modest abnormalities of knee imaging, and exams showing 4/5 left leg strength. The ALJ therefore gave a detailed explanation as to why he provided less weight to a portion of Dr. Mohan's opinion. Merriweather contends that the ALJ should have given controlling weight to his opinion, however Dr. Mohan did not have an extensive

treating relationship with him, and Dr. Mohan did not provide an explanation as to what impact his condition might have on his ability to work. Further, simply because Dr. Mohan's opinion came a year after the opinions of the state agency consultants who the ALJ afforded more weight, where the ALJ considered other evidence and gave additional reasons for giving the opinion he did to Dr. Mohan's opinion, this does not necessarily require remand. An ALJ's determination as to the weight assignment an opinion generally will not be disturbed unless there is some indication that the ALJ dredged up inconsistencies or failed to give a sufficient reason for his or her findings. *Dunn v. Colvin*, 607 Fed. Appx. 264, 267 (4th Cir. 2015). Accordingly, this Court finds that substantial evidence supports the ALJ's findings with respect to Dr. Mohan's opinion. Merriweather's objection is overruled.

### III. Post Hearing Evidence

Merriweather objects to the determination that it was proper for the Appeal's Council to reject the new evidence submitted to it for review. Merriweather argues the new evidence fills an "evidentiary gap" in the record because it contains an opinion including work-related limitations for the time period in question. In the decision denying benefits, Merriweather argues that because the ALJ pointed to the lack of evidence regarding work-specific limitations in Dr. Patel's opinion as one reason for providing his opinion less weight, the new evidence is relevant. The Commissioner argues that the Magistrate Judge properly recommended finding that the post hearing evidence from Dr. Diver and Dr. Patel were properly rejected by the Appeals Council. The post hearing evidence in question includes: (1) a Medical Source Statement dated November 9, 2016 from Dr. Kerry Diver, and (2) a Medical Source Statement dated November 9, 2016 from Dr. Kunal Patel. These medical records which were not before the ALJ are dated approximately six months prior to the ALJ's decision date and three months prior to the hearing date where the claimant offered testimony. At the hearing, Merriweather's counsel requested

13

the record be left open for fourteen (14) days, suggesting that he had records to submit from Aiken VA Clinic. However, the ALJ rendered his decision after Merriweather did not provide any additional records in the requested time frame and did not request additional time to submit these records. Thereafter, Merriweather requested review of the ALJ's decision, and submitted this "new" opinion evidence in June of 2017.

The Regulations provide that the Appeal Council will consider additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. § 416.1470(a)(5); *See Wilkins v. Dep't. of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (if a claimant submits evidence to the Appeals Council for review that is *new, material, and relates to the period on or before the ALJ's decision*, the Appeals Council must consider the newly submitted evidence.) (emphasis added). "New" evidence is evidence that is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96 (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is material if there is a reasonable probability that the new evidence would change the outcome of the decision. *Wilkins*, 953 F.2d at 96. Further, the Regulations provide that the Appeals Council will consider additional evidence if the claimant shows "good cause" for not submitting the evidence earlier. 20 C.F.R. § 416.1470(b).[4] In *Meyer v. Astrue*, the Fourth Circuit determined that when a claimant submits additional evidence to the Appeals Council that was not before the ALJ that is new and material, the

---

[4] On January 17, 2017, the Regulation was amended to include the "good cause" standard for consideration of additional evidence by Appeals Council. Here, the claimant appeared at the hearing before the ALJ after this date, the ALJ issued its decision after this date, and the Appeals Council reviewed the case after this date. At least one court in this circuit has found that the appropriate way to decide whether this new version of the regulation applies is based on when the Appeals Council issues it decision. *See Forney v. Berryhill*, No. 2:18-cv-00423, 2019 1574284 (D.S.C. March 25, 2019) (citing *Collins v. Berryhill*, No. 3:17-cv-633, 2019 WL 4232888, at *12 n. 4 (E.D.Va. Aug. 20, 2018), adopted by 2018 WL 4224854 (E.D.Va. Sept. 5, 2018).

14

Appeal Council should evaluate the record, including the new and material evidence, to determine whether it warrants a change in the decision by the ALJ. 662 F.3d 700, 704-705 (4th Cir. 2011). If the Appeals Council determines on review that the decision is contrary to the weight of the evidence, it may issue its own decision or remand the case. *Id.*

"Good cause" includes instances such as an action of the Commissioner misleading a claimant from timely submission, the claimant suffering from a physical, mental, educational, or linguistic problem causing a late submission, or some other unusual, unexpected or unavoidable circumstance beyond the control of the claimant which prevented either the claimant from informing the ALJ of the existence of the evidence in question or submitting this evidence. 20 C.F.R. § 416.1470(b). Merriweather argues in his objections that the "good cause" shown in this case is that he stated to his current attorney that he did not think his previous attorney had submitted the records in question to the ALJ, thus there was an obvious error made by his former counsel in failing to submit the records in this case. Aside from this statement, Merriweather does not provide any additional information regarding the reason that these records were not before the ALJ at the time of the hearing or submitted during the time that the record was held open prior to the ALJ making his decision.

However, this Court need not decide whether this constitutes good cause under the Regulations. The Appeals Council noted that Merriweather submitted medical records dated June 30, 2010 through March 21, 2017. It included statements from Dr. Patel and Dr. Diver. Despite the fact that these records, including the statements in question were dated months prior to the hearing, the Appeals Council did not consider whether Merriweather established "good cause" as its reason for rejecting the evidence.[5]

---

[5] This Court notes that assuming Merriweather's statements are accurate that his previous counsel erred in submitting these documents, it is unclear whether negligence in submitting the documents would meet the good cause standard. Nonetheless, this Court will assume that Plaintiff would be able to make a good cause showing for failure to submit the medical records in this case because the Appeals Council did not cite otherwise.

15

Instead, the Appeals Council determined that the evidence did not show a reasonable probability that it would change the outcome of the decision. With respect to Dr. Diver's statement, Dr. Diver provided a statement indicating certain physical limitations. However, the ALJ did not indicate that the evidence before him lacked evidence regarding physical limitations which would have changed his assessment of his opinion. This Court agrees with the Magistrate Judge that the Appeals Council properly determined that there has been no showing that a reasonable probability exists that this evidence would have changed the ALJ's decision. Moreover, in his objections, Merriweather does not appear to challenge this rationale regarding Dr. Diver's opinion. As previously pointed out by the Magistrate Judge, the ALJ specifically pointed to Dr. Diver's treatments notes to support some of his findings within the RFC regarding physical restrictions.

Instead, Merriweather argues that Dr. Patel's opinion "regarding limitations due to depression" fills an evidentiary gap because the ALJ stated there was no opinion evidence regarding limitations due to depression. In reviewing the ALJ's opinion, this Court finds that substantial evidence supports the findings of the Commissioner in this case. The ALJ references in his assessment of the GAF scores that the GAF scores themselves do not imply any particular work-related limitations. However, the ALJ also states that these scores are generally consistent with the other mental status exams, and gives them some weight. He then gives little weight to the conclusion of a state agency psychologist who says Merriweather's depression is not severe because that opinion was inconsistent with the record. Thus, it does not appear that the ALJ determined that had he had an opinion before him with additional mental limitations, it would alter his findings. Indeed, the ALJ specifically noted that Merriweather's depressive issues warrant restrictions with his interaction with the public and require restrictions to simple tasks and decisions. He also noted that Merriweather did not leave his position at the Salvation

16

Army due to depression but still found that he had significant mental limitations. Further, the ALJ also cited to Dr. Patel's medical records and treatment notes to support a finding that Merriweather suffered from depression. It appears to this Court that the ALJ properly reviewed the record as a whole, and further, that substantial evidence supports the determination that Merriweather did not show a reasonable probability that the the "new" evidence submitted by Merriweather in this case would have changed the outcome because the ALJ already gave due consideration to Merriweather's mental impairments and provided corresponding limitations within the RFC. Accordingly, this objection is overruled.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to those objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF No. 25]. The Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  
July 22, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge